UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
THE TRAVELERS INDEMNITY COMPANY
OF AMERICA,

                        Plaintiff,

               -against-

SOUTHWEST MARINE AND GENERAL
INSURANCE COMPANY

                     Defendant.
-------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
21-CV-01828 (JMA)(JMW)

**A P P E A R A N C E S:**

Amy C. Gross
**Usery & Associates**
P.O. Box 2996
Hartford, CT 06104-2996
*For Plaintiff The Travelers Indemnity*
*Company of America*

Michael Frank Panayotou
**Melito & Adolfsen P.C.**
233 Broadway
New York, NY 10279
*For Defendant Southwest Marine*
*and General Insurance Company*

**WICKS,** Magistrate Judge:

       This is an insurance coverage dispute.  Plaintiff, The Travelers Indemnity Company of

America ("Travelers") seeks a declaration that Defendant Southwest Marine and General

Insurance Company ("Southwest") has a duty to defend VRD Contracting, Inc. ("VRD"),

Shoreham-Wading River Central School District (the "District"), and Park East Construction

Corp. ("Park East") in the underlying personal injury action (the "Underlying Action").

Travelers alleges, and Southwest does not dispute, that Southwest issued a policy of insurance providing general liability coverage to Donninger Construction, Inc. ("Donninger"), which was performing spackling work for Certified Interiors, Inc. ("Certified Interiors"), a non-party subcontractor, at the project site where an alleged injury occurred. Travelers alleges that the project site was owned by the District, VRD was the general contractor, and Park East was the construction manager. The parties do not dispute that this policy contained an additional insured endorsement, which provides coverage for additional insureds with respect to bodily injury "caused, in whole or in part, by" the acts or omissions of Donninger or those acting on its behalf in the performance of its ongoing operations for the additional insureds. It is also undisputed that the claimant in the Underlying Action alleges that he was injured by a bucket of spackle that fell off a scaffold and hit him.

What the parties do dispute is whether, pursuant to the policy issued by Southwest and a purchase order providing for Donninger's work at the project, Southwest has a duty to defend VRD, the District, and Park East as additional insureds. To date, Travelers has been defending VRD, the District, and Park East in the Underlying Action.

Before the Court on referral from the Hon. Joan M. Azrack is Traveler's motion for partial summary judgment and Southwest's cross-motion for summary judgment. (Electronic Order, dated Nov. 23, 2022.) Travelers seeks an Order declaring that: (i) Southwest is obligated to defend VRD, the District, and Park East in connection with the Underlying Action; (ii) Southwest's duty to defend VRD, the District, and Park East in connection with the Underlying Action is primary and non-contributory to any defense available to VRD, the District, and Park East from Travelers with respect to the Underlying Action; (iii) Travelers' defense obligations toward VRD, the District, and Park East are excess to those of Southwest with respect to the

Underlying Action; and (iv) further granting an award in favor of Travelers against Southwest

for all sums Travelers has paid in defending VRD, the District, and Park East as to the

Underlying Action.  (DE 20; DE 21.)

On the other hand, Southwest seeks an Order declaring simply that Southwest owes no

duty to defend the District, VRD, and Park East in the Underlying Action.  (DE 21.)

For the reasons that follow, the undersigned respectfully recommends that Traveler's

motion be GRANTED, and Southwest's cross-motion be DENIED.

## I.     UNDISPUTED MATERIAL FACTS[1]

### The Travelers Policy

Travelers issued a policy providing VRD Contracting, Inc. ("VRD") with Commercial

General Liability and Employee Benefits Liability coverage bearing policy number DT-CO-

9395R097 TIA-16 for the policy period of October 18, 2016, to October 18, 2017 (the "Travelers

Policy").  (DE 20-26 at ¶ 1.)  Subject to certain terms, conditions, and exclusions, the Travelers

Policy provides coverage for bodily injury that takes place during the policy period and is caused

---

[1] Unless otherwise noted, a standalone citation to a party's Rule 56.1 statement throughout this Report and Recommendation means that the Court has deemed the underlying factual allegation undisputed. Any citation to a Rule 56.1 statement incorporates by reference the documents cited in it. Where relevant, however, the Court may cite directly to an underlying document.  The Court has deemed true undisputed facts averred in a party's Rule 56.1 statement to which the opposing party cites no admissible evidence in rebuttal.  *See Stewart v. Fashion Inst. of Tech.,* No. 18-cv-12297 (LJL), 2020 WL 6712267, at *8 (S.D.N.Y. Nov. 16, 2020) ("'[P]ursuant to Local Civil Rule 56.1 [the movant's] statements are deemed to be admitted where [the non-moving party] has failed to specifically controvert them with citations to the record'") (quoting *Knight v. N.Y.C. Hous. Auth.*, No. 03 Civ. 2746(DAB), 2007 WL 313435, at *1 (S.D.N.Y. Feb. 2, 2007)); *Lumbermens Mut. Cas. Co. v. Dinow*, No. 06-CV-3881 (TCP), 2012 WL 4498827, at *2 n.2 (E.D.N.Y. Sept. 28, 2012) ("Local Rule 56.1 requires . . . that disputed facts be *specifically* controverted by admissible evidence. Mere denial of an opposing party's statement or denial by general reference to an exhibit or affidavit does not specifically controvert anything").  Further, to the extent a party improperly interjects arguments and/or immaterial facts in response to facts asserted by the opposing party, and does not specifically controvert such facts, the Court disregards those statements.  *See McFarlane v. Harry's Nurses Registry*, No. 17-CV-06350 (PKC) (PK), 2020 WL 1643781, at *1 n.1 (E.D.N.Y. Apr. 2, 2020) (quoting *Risco v. McHugh*, 868 F. Supp. 2d 75, 85 n.2 (S.D.N.Y. 2012)).

by an accident.  (*Id.* at ¶ 2.)   The Travelers Policy also contains an "other insurance" provision that provides that coverage under the Travelers Policy is "excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy" ("Other Insurance Provision").  (*Id.* at ¶ 3.)

The Travelers Policy also contains a provision that states that, with respect to coverage provided to additional insureds pursuant to a written contract or agreement, "the insurance provided by this endorsement . . . is excess over any valid and collectible 'other insurance', whether primary, excess, contingent or on any other basis, that is available to the additional insured when that person or organization is an additional insured under such 'other insurance'" ("Excess Provision").  (*Id.* at ¶ 4.)

**The Southwest Policy**

Southwest issued policy number GL2016STC00037 to Donninger providing commercial general liability coverage for the policy period of September 14, 2016, to September 14, 2017 (the "Southwest Policy").  (*Id.* at ¶ 5.)  Subject to certain terms, conditions, and exclusions, the Southwest Policy provides coverage for bodily injury that takes place during the policy period and is caused by an accident.  (*Id.* at ¶ 6.)  The Southwest Policy contains an ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION endorsement (form CG 20 10 04 13) (the "Southwest AI Endorsement") listing, under Name Of Additional Insured Person(s) Or Organization(s), "BLANKET".  (*Id.* at ¶ 7.)  The "Location(s) of Covered Operations" portion of the Schedule of the AI Endorsement of the Southwest Policy is blank.  (DE 21-3 at ¶ 37.)  It appears as follows:

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organizations | Location(s) Of Covered Operations |
|---|---|
| BLANKET | |

| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |
|---|

(DE 20-5 at DEF-000025.)  The Declarations of the Southwest Policy do not contain additional

information required to complete the Schedule.  (DE 21-3 at ¶ 38.)

The Southwest AI Endorsement further provides, in relevant part, that:

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    **1.**  Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above. However:

    **1.**  The insurance afforded to such additional insured only applies to the extent permitted by law; and

    **2.**  If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

(DE 20-26 at ¶ 8.)

The Southwest Policy also provides, with respect to "other insurance," in relevant part, that:

a. **Primary Insurance**

This insurance is primary except when Paragraph **b**. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph c. below.

b. **Excess Insurance**

1) This insurance is excess over:

   a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

      i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

      ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

      iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

      iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And property Damage Liability.

   b) Any other primary insurance available to you [Donninger] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(DE 20-26 at ¶ 11.)

**The Underlying Project and Purchase Order**

The Amended Complaint in the Underlying Action alleges that VRD was the general contractor at a construction project at Miller Avenue Elementary School in Suffolk County, New York (the "Project"). (*Id.* at ¶ 12.) The record in the Underlying Action shows that VRD was the general contractor at the Project. (*Id.* at ¶ 13.) The Amended Complaint in the Underlying Action further alleges that Park East was the construction manager on the Project, and the District was the owner of the Project site. (*Id.* at ¶ 14.) In the Underlying Action, Clinton Mellas testified that as the project superintendent of Park East he was responsible for reporting "back to the owner, which is the school district, in the progression of the project." (DE 20-20 at 10:22-11:19, 12:12-16, 13:17-20.) Further, the Standard Form of Agreement Between Owner and Contractor, AIA Document A132-2009, as between VRD and the District, that Travelers received during the course of its investigation of the underlying claim identifies the District as Owner and VRD as the Contractor. (DE 20-16 at ¶ 6; DE 20-18 at 1.)

Testimony in the Underlying Action from VRD and Certified Interiors, Inc. states that Certified Interiors was performing work as a subcontractor of VRD at the Project site at the time of Claimant's injury. (*Id.* at ¶ 16.) Certified Interiors in turn subcontracted with Donninger for Donninger to provide spackling work at the Project pursuant to a Purchase Order dated June 5, 2017. (*Id.* at ¶ 17.) That Purchase Order provides that Donninger must provide $1 million per occurrence of comprehensive general liability coverage including the "Owner" as an additional insured on a primary basis. (*See Id.* at 18; DE 9 at ¶ 5.) The Purchase Order does not define who the "Owner" is, as the space for "Owner" at the top of the first page is blank. (DE 21-3 at ¶ 36.) The Purchase Order further states that "[i]n the event of a conflict between AIA Form

A401-1997 and this Purchase Order, the terms of this Purchase Order shall prevail." (DE 21-3 at ¶ 35.)

**The Underlying Action**

At the time of his injury, Claimant alleges and has testified in the Underlying Action, that that he was employed by Certified Interiors, performing carpentry work on the Project. (*Id.* at ¶ 19.) Claimant was allegedly injured on August 11, 2017, when he was hit with an object that fell from a height at the Project site. (*Id.* at ¶ 20.) Claimant testified at his deposition in the Underlying Action that he was injured at the Project site when a bucket of spackle fell from a scaffold he was moving and struck his head, neck, and back. (*Id.* at ¶ 21.) On or about July 16, 2018, Claimant filed the Underlying Action against, among others, VRD, the District, and Park East, alleging negligence and violation of the New York Labor Law in connection with the August 11, 2017 incident. (*Id.* at ¶ 22.) On July 24, 2018, Claimant filed an Amended Complaint in the Underlying Action, adding Donninger as a defendant and alleging that he was injured when an object fell off a scaffold, striking him. (*Id.* at ¶ 23.) In that Amended Complaint, Claimant alleges that Donninger and the other defendants caused his injury through their negligence, recklessness, and carelessness, including by failing to provide Claimant with a safe place to work and failing to maintain the work site pursuant to laws and statutes. (*Id.* at ¶ 24.) Incident reports, including from Certified Interiors, concerning Claimant's alleged accident state that Claimant was hit in the head, back, and neck with a bucket of spackle that fell from a scaffold. (*Id.* at ¶ 25.) Travelers has provided and continues to provide a defense to VRD, the District, and Park East in the Underlying Action. (*Id.* at ¶ 26.)

**Travelers Tenders to Southwest**

On July 23, 2018, Travelers tendered to Donninger by email. (*Id.* at ¶ 27.) By letter dated August 2, 2018, Prosight, on behalf of Southwest, advised Travelers that it was investigating the claim. (*Id.* at ¶ 28.) Travelers followed up with Prosight on the tender in August and October 2018. (*Id.* at ¶ 29.) Travelers continued to follow up with Prosight, trying to obtain a response to its tender, through October 2020. (*Id.* at ¶ 30.) By correspondence dated November 18, 2020, Southwest denied the tender. (*Id.* at ¶ 31.)

Travelers filed this lawsuit on April 5, 2021, seeking a declaration of Southwest's coverage obligations toward VRD, the District, and Park East with respect to the Underlying Action. (*Id.* at ¶ 33.) Southwest answered Travelers' complaint on July 16, 2021. (*Id.* at ¶ 34.)

## II.    LEGAL STANDARD

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The initial burden is on the movant to demonstrate the absence of a genuine issue of material fact, which can be met by pointing to a lack of evidence supporting the nonmovant's claim. *Celotex Corp. v. Catrett*¸ 477 U.S. 317, 323, 325 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Once the movant meets its initial burden, the nonmovant may defeat summary judgment only by adducing evidence of specific facts that raise a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250; *Davis v. New York*¸ 316 F.3d 93, 100 (2d Cir. 2002). "The Court is to believe the evidence of the non-movant and draw all justifiable inferences in her favor, but the non-movant must still do more than merely assert conclusions

that are unsupported by arguments or facts." *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268 (E.D.N.Y. 2019) (internal citations omitted). The role of the court at the summary judgment stage is not to *resolve* disputed issues of fact, but merely undertake an analysis to identify whether triable issue of fact exist. That is, the court's function is "issue-finding", not "issue-resolution." *Carolina Cas. Ins. Co. v. Cap. Trucking Inc.*, 523 F. Supp.3d 661, 668 (S.D.N.Y. 2021) (citing *Gallo v. Prudential Residential Servs., Ltd. P'ship* 22 F.3d 1219, 1224 (2d. Cir. 1994)).

In considering cross-motions for summary judgment, "the standard is the same as that for individual motions." *Amin Realty, L.L.C. v. Travelers Prop. Cas. Co.*, No. 05-CV-195 (RLM), 2006 WL 1720401, at *2 (E.D.N.Y. June 20, 2006) (citing *Penguin Grp. (USA) Inc. v. Steinbeck*, 537 F.3d 193, 200 (2d Cir. 2008) (explaining that facts must be construed in the light most favorable to the non-moving party for each cross-motion for summary judgment)). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001). Even "[w]hen both parties move asserting an absence of genuine issues of material fact, a court need not enter judgment for either party. *Id.*

Against this backdrop, the Court considers the parties' cross-motions for summary judgment.

## III. DISCUSSION

### A. The Duty to Defend

An insurer's duty to defend is "exceedingly broad" under New York law. *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014).[2] The duty to defend is

---

[2] New York law applies here because although the parties have not directly addressed the issue of which law applies to this contractual dispute, the parties' memoranda of law apply New York law. *See Atl. Cas.*

"triggered by the allegations contained in the underlying complaint" and typically requires comparing the allegations in the underlying complaint to the insurance policy terms. *LM Ins. Corp. v. Fed. Ins. Co.*, 585 F. Supp. 3d 493, 499 (S.D.N.Y. 2022) (quotes and cites omitted). If the claims in the underlying complaint "rationally fall within coverage of the policy at issue," the insurer has a duty to defend. *Abrams, Fensterman, Fensterman, Eisman, Greenberg, Formato & Einiger, LLP v. Underwriters at Lloyd's, London*, 918 F. Supp. 2d 114, 120 (E.D.N.Y. 2013). "Any ambiguity as to the insurer's duty to defend is resolved in favor of the insured." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004).

It is Traveler's position that Southwest has a duty to defend VRD, the District, and Park East in the Underlying Action pursuant to the Southwest Policy. (DE 20-1 at 9.) Travelers asserts that the Southwest AI Endorsement offers coverage on a "blanket" basis, for bodily injury caused, in whole or in part, by . . . "Your[] [Donninger's] acts or omissions; or . . . [t]he acts or omissions of those acting on your [Donninger's] behalf; in the performance of your [Donninger's] ongoing operations for the additional insured(s) at the location(s) designated above." (DE 20-1 at 10; *see* DE 20-5 at DEF-000025.) Travelers contends that because Donninger has been sued in the Underlying Action whereby Claimant alleges his injuries were caused by Donninger's negligence, recklessness, and carelessness (*i.e.*, a bucket with spackle falling from a scaffold and hitting Claimant on the head, back and neck), Southwest's duty to defend is triggered under the Southwest Policy. (DE 20-1 at 11.) Travelers also argues that

---

*Ins. Co. v. Value Waterproofing, Inc.*, 918 F. Supp. 2d 243, 252 (S.D.N.Y.), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013). "Federal courts sitting in diversity look to the choice-of-law rules of the forum state." *Int'l Bus. Machines Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). "Pursuant to New York's choice-of-law rules, an agreement between the parties to apply New York law, even if implicit, is sufficient to establish the appropriate choice of law." *Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 600 (S.D.N.Y. 2016). Accordingly, because the parties' briefing demonstrates an agreement to apply New York law, the Court shall apply New York law. *See id.*

pursuant to the "other insurance" provision of the Traveler's Policy, the Southwest Policy is primary to any coverage under the Traveler's policy, and therefore Southwest must reimburse Travelers for the costs incurred in defending VRD, the District, and Park East post-tender. (*Id.* at 12-15.)

Southwest does not dispute that coverage under the Southwest AI Endorsement is available where bodily injury is caused in whole or in part by the acts or omissions of its insured, or those acting on its behalf in the performance of its ongoing operations for the additional insureds. (*See* DE 21-3 at ¶¶ 6-8; DE 21-1; DE 23.) Southwest also does not dispute that the Claimant in the Underlying Action alleges that Donninger, and the other defendants, caused his injury through its negligence, recklessness, and carelessness. (DE 21-3 at ¶ 24.) Rather, Southwest argues that here it has no duty to defend VRD, the District, and Park East because pursuant to the Purchase Order between Certified Interiors and Donninger (Southwest's named insured, which Southwest contends is the controlling document, VRD, the District, and Park East are not required to be named as additional insured. (DE 21-1.) Southwest argues its position is supported by the fact that the "Location of Covered" operations is left blank in the Southwest AI Endorsement, and that "Owner" is not defined by the Purchase Order. (*Id.*) Thus, Southwest contends that no coverage is owed. (*Id.*)

i. **"Blanket" Coverage under the Southwest AI Endorsement**

It is not in dispute that where the Southwest AI Endorsement provides for "Name Of Additional Insured Person(s) or Organization(s)" the term "BLANKET" is stated. (DE 21-3 at ¶ 7; DE 20-5 at DEF-000025.) The issue for the Court to decide is whether the term "BLANKET" in the Southwest AI Endorsement means coverage is provided to those acting on the insured's (Donninger's) behalf in the performance of its ongoing operations for the additional insureds, as

Travelers suggests, or that coverage is provided as required by the Purchase Order, as Southwest suggests.

Under New York law, the interpretation of a contract "is a matter of law for the court to decide." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). Unambiguous provisions of an insurance contracts must be given their "plain and ordinary" meaning and must be read as a whole. *10 Ellicott Square Ct. Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011); *Hester v. Navigators Ins. Co.*, 917 F. Supp. 2d 290, 296 (S.D.N.Y. 2013). "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 90 (2d Cir. 2010) (quotations omitted.) If a term of an insurance contract is "susceptible to at least two reasonable interpretations, summary judgment is inappropriate because the meaning of an ambiguous contract term is 'generally an issue of fact, requiring the trier of fact to determine the parties' intent." *Lepore v. Hartford Fire Ins. Co.*, 374 F. Supp. 3d 334, 343 (S.D.N.Y. 2019), *aff'd*, 800 F. App'x 29 (2d Cir. 2020) (internal quotations omitted). If no ambiguity is found, a court may award summary judgment. *Int'l Multifoods Corp.*, 309 F.3d at 83.

Travelers contends that Southwest owes VRD, the District, and Park East a duty to defend because of the Southwest AI Endorsement's very terms. (DE 20-1 at 9-12.) Relying on the terms of the Southwest AI Endorsement, Travelers asserts that there are no scheduled limitations to this blanket coverage and that there is no requirement that coverage be required by an underlying written agreement. (*Id.* at 10.) Because the Claimant in the Underlying Action

has alleged that his injury was caused by Donninger in its performance of work for VRD, the District, and Park East, Travelers urges the Court to find that Southwest has the duty to defend VRD, the District, and Park East under the Southwest Policy. (*Id.* at 12.)

Southwest argues that a plain and ordinary reading of the word "BLANKET" in the Southwest AI Endorsement "can only plausibly mean" that coverage is only owed to an entity which the insured agrees to provide coverage to by contract. (DE 21-1 at 8.) Southwest avers that the term "blanket" is an industry term which means coverage is to be provided to any person or organization for which the named insured is obligated (such as by contract) to name as an additional insured. (*Id.*) The other option would be to provide for additional insureds by "schedule," which requires a listing of the additional insureds by name. (*Id.*) Thus, Southwest contends that the only plausible reading of the word "blanket" requires the Court to consult the Purchase Order to determine Donninger's obligation, if any, with respect to additional insureds. (*Id.* at 9.)

Travelers has sufficiently set forth a *prima* facie case that VRD, the District, and Park East are provided coverage as additional insureds.[3] In so finding, the Court considers the many undisputed facts in this case. It is undisputed that Southwest issued a policy providing general liability coverage to Donninger, which was performing spackling work at the Project. (DE 21-3 at ¶¶ 5, 17.) It is further undisputed that VRD was the general contractor at the project (*id.* at ¶ 13), and that Park East was the construction manager (*id.* at ¶ 15.) Southwest does not dispute that the Southwest Policy provides coverage for additional insureds with respect to bodily injury "caused, in whole or in part, by" the acts or omissions of Donninger or those acting on its behalf in the performance of its ongoing operations for the additional insureds. (*Id.* at ¶ 8.) It is

---

[3] The Court's analysis as to whether the District is the "Owner" of the project is set forth *infra*. (See Point II.B.)

undisputed that Donninger was performing spackling work at the Project for Certified Interiors, a subcontractor of VRD, at the time of the alleged injury to the Claimant (*id.* at ¶ 16), and that the Claimant has alleged that his alleged injury was caused when he moved a scaffold and a bucket of spackle that had been sitting on the scaffold fell and hit him. (*Id* at ¶¶ 21, 23, 25). In light of these undisputed facts, Travelers has met its initial burden.

In opposition and in support of its cross-motion, Southwest urges the Court to reject Travelers proposed reading of the term "blanket." According to Southwest, under a "blanket" endorsement, such as the one here, coverage is only provided pursuant to an underlying contract. (DE 21-1 at 8.) Southwest contends that this is "generally recognized" in the insurance industry, by courts in New York, and "elsewhere." (DE 21-1 at 8.) But the support Southwest proffers on this point leaves the Court unsatiated.

Southwest contends that its reading of the term "blanket" is recognized by courts in New York and "elsewhere" but only cites to one case: *Starr Indem. & Liab. Co. v. Excelsior Ins. Co.*, 516 F. Supp. 3d 337 (S.D.N.Y. 2021). (DE 21-1 at 9.) Southwest argues that because the court in *Starr* found that insurance was provided on a "blanket" basis, "meaning that the parties did not need to 'designate[ ] specific additional insureds and projects for additional insured coverage," but still chose to limit coverage by the terms of an underlying contract, the term "blanket" necessarily means insurance provided based on an underlying contract.

The Court is not so convinced. As Judge Learned Hand once wrote, albeit in a different context, "words are chameleons, which reflect the color of their environment." *Commissioner v. National Carbide Corp.,* 167 F.2d 304, 306 (2d Cir.1948). The terms of the insurance contracts in *Starr Indem. & Liab. Co. v. Excelsior Ins. Co.* are markedly different from the one at issue here. In *Starr*, the policies at issue expressly limited the additional insureds to those provided for

by contract.  For example, the general commercial liability policy in *Starr* expressly stated that "Additional Insureds" included: "any person or organization when [subcontractor] and such person or organization *have agreed in writing in a contract agreement* or permit that such person or organization be added as an additional insured. . ."  *Starr Indem. & Liab. Co.*, 516 F. Supp. at 342 (emphasis added).  Elsewhere, the policies further limited "additional insured" status to "the additional insured that are the subject of the *written contract or written agreement*. . ."  *Id.* (emphasis added).  And so, it cannot be said that the court limited "blanket" coverage to those provided for by the underlying contract because the meaning of "blanket" requires so, *per se*, but rather the court was bound by what was expressly provided for in the policies.

Additionally, Southwest cites to "Couch on Insurance" (3 Couch on Ins. § 40:30) for the general proposition that a blanket additional insured endorsement "generally" provides coverage to the person or entity who the insured is obligated to name as an additional insured by virtue of a contract.  (DE 21-1 at 8-9.)  While the Court recognizes the Couch as a leading treatise on insurance law, relying on an excerpt can hardly be deemed sufficient to satisfy one's burden on summary judgment.

The same can be said about Southwest's citation to the Glossary of Insurance and Risk Management Terms at International Risk Management Institute for its definition of a "Blanket Additional Insured Endorsement."  (*See* DE 22-1 at 9) (citing "Glossary of Insurance and Risk Management Terms at International Risk Management Institute (IRMI)" http://www.irmi.com/online/insurance-glossary/terms/b/blanket-additional-insuredendorsement.aspx.)  As an initial matter, the Court questions whether it can consider this evidence in light of the fact that on a motion for summary judgment, the court only needs to consider evidence that would be admissible at trial.  *Picard Tr. for SIPA Liquidation of Bernard*

*L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170, 181 (2d Cir. 2022); *Kaiser v. Fairfield Properties*, No. 20-CV-05399 (GRB) (JMW), 2022 WL 17412405, at *8 (E.D.N.Y. Feb. 11, 2022), *report and recommendation adopted* (Mar. 11, 2022), *appeal dismissed sub nom. Kaiser v. Krecko,* No. 22-665, 2022 WL 17413211 (2d Cir. July 20, 2022), *cert. denied*, 143 S. Ct. 499 (2022) (declining to consider on summary judgment a tape recording that had not been authenticated). However, the court has "broad discretion in choosing whether to admit evidence." *Picard Tr. for SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC*, 49 F.4th at 181. So, even considering the glossary evidence in its discretion, the Court does not find that IRMI's general definition moves the proverbial needle. *See De Figueroa v. New York State*, No. 17-CV-436 (PKC) (LB), 2022 WL 4111028, at *3 (E.D.N.Y. Sept. 8, 2022) ("A mere 'scintilla of evidence' in support of the nonmoving party is insufficient; 'there must be evidence on which the jury could reasonably find for the [non-movant].'") Therefore, it is respectfully recommended that the Court find a genuine issue of fact does not exist on this ground.

ii.     **Meaningless or Superfluous Provisions Within the Southwest AI Endorsement**

Southwest contends its proposed reading of the term "blanket" is supported by the provision in the Southwest AI Endorsement which provides the coverage under the policy "will not be broader than that which you are required by the contract or agreement to provide for such additional insured." (DE 21-1 at 9; DE 20-5 at DEF-000025.) Travelers contends this very same provision establishes that coverage under Southwest AI Endorsement is *not* governed by an underlying contract.

The Southwest AI Endorsement provides in relevant part:

> **3.** <u>If coverage provided to the additional insured is required by a contract or agreement</u>, the insurance afforded to such additional insured will not be broader than that which you are

> required by the contract or agreement to provide for such
> additional insured.

(DE 20-5 at DEF-000025) (emphasis added.)

Under New York law, insurance policies are subject to the same tenets of general contract interpretation. *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 98 (2d Cir. 2012). This includes the rule that "[a]ny interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless. . . is not preferred and will be avoided if possible." *Id.* (quotations omitted); *Certified Multi-media Sols., Ltd. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, 150 F. Supp. 3d 228, 244 (E.D.N.Y. 2015), aff'd, 674 F. App'x 45 (2d Cir. 2017) ("Therefore, the Court declines to adopt the Defendant's interpretation because it ignores the plain language of the Policy, is inconsistent with the Policy as a whole, and renders the second paragraph of the Policy superfluous").

If the Court were to accept Southwest's reading of "blanket" coverage—that coverage is owed to additional assureds only pursuant to an underlying contract—then the underlined phrase in the Southwest AI Endorsement above is rendered superfluous. Put differently, if coverage is only provided based on an underlying contract, then there would be no need to say "[i]f coverage. . . is required by a contract." Instead, the paragraph above would just read, "insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured." The Court finds that by stating "**[i]f** coverage. . . is required by contract or agreement," the Southwest AI Endorsement necessarily contemplates a scenario where coverage is *not* required by contract or agreement. Reading the Southwest AI Endorsement as a whole, it is plain that the above paragraph is meant to limit the scope of coverage provided to additional insureds and does not establish that an underlying contract is a precondition to receiving coverage. The Court finds that under the plain

and ordinary meaning of the Southwest AI Endorsement, a party can qualify as an additional insured even where not required by an underlying contract or agreement. Therefore, it is respectfully recommended that the Court find a genuine issue of fact does not exist on this ground.

### iii. The Blank "Location of Covered Operations"

Southwest further argues that its proposed reading of the term "blanket" must be correct because the "Location of Covered Operations" has been left blank. (DE 21-1 at 11.)

The Southwest AI Endorsement provides, in relevant part:

> **A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **2.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured(s) <u>at the location(s) designated above</u>.

(DE 20-5; DEF-000025) (emphasis added.)

Southwest contends that because the location has been left blank, the only reasonable interpretation of the Southwest AI Endorsement is that blanket coverage is provided pursuant to a written contract. (DE 21-1 at 11-12.) Southwest argues that if Travelers' overly literal reading of the term "blanket" is accepted as true and that coverage under the Southwest AI Endorsement is not pursuant to the Purchas Order, then in effect *no coverage* would be afforded because a location of operations has not been provided for. (*Id.* at 11.) Southwest argues that one cannot use the underlying contract to identify the location but disregard the same contract for the identification of the insureds. (*Id.* at 12.)

Travelers rejects Southwest's position that its proposed reading of the Southwest AI Endorsement would result in such a nullity. (DE 22 at 7.) Travelers counters that it is not relying on the Purchase Order to establish the location of operations, but rather reads the endorsement to provide coverage to any person or entity who satisfies the requirements in the text of the endorsement. (*Id.* at 8.) In other words, because the location is not restricted or specified, the reasonable reading of the endorsement is to provide coverage to the location where Donninger is performing "ongoing operations for the additional insureds." (*Id.* at 8.)

Southwest's suggested interpretation of the endorsement runs afoul of the general tenant of New York law that "where the precise meaning of insurance policies is ambiguous, their provisions are to be construed in favor of finding coverage." *See Olin Corp. v. Certain Underwriters at Lloyd's London*, 468 F.3d 120, 129 (2d Cir. 2006). "This is because New York follows the maxim of *contra proferentem* in insurance cases: where the plain language of a policy permits more than one reasonable reading, a court must adopt the reading upholding coverage." C*GS Indus., Inc. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 77 (2d Cir. 2013) (quotations omitted).

Where, as here, the parties' intentions are derived by looking at the policy as a whole, so as to not distort the meaning of the policy by giving "undue force" to single words or phrases (*see GEICO Marine Ins. Co. v. Great N. Ins. Co.*, No. 16-CV-1788(GHW)(RLE), 2017 WL 4286394, at *5 (S.D.N.Y. Sept. 11, 2017), *report and recommendation adopted*, No. 1:16-CV-1788-GHW-RLE, 2017 WL 4286312 (S.D.N.Y. Sept. 26, 2017)), a reasonable reading of the Southwest AI Endorsement is that because the location is not restricted or specified, coverage is provided at the location where Donninger is performing "ongoing operations for the additional insureds." Under this reading, all of the policy's provisions are given effect. Therefore, it is

respectfully recommended that the Court find a genuine issue of fact does not exist on this ground.

**B. Whether Coverage is Owed to the District**

It is Travelers' position that the District is included in the group of additional insureds owed coverage under the Southwest AI Endorsement.  (DE 20-1.)

Southwest argues that the Court cannot find the District entitled to coverage because the "Owner" is not defined by the Purchase Order and Travelers fails to establish that the District was intended to be the Owner of the Project.  (DE 21-1 at 13.)

Travelers has submitted sufficient evidence to set out a *prima facie* case as to who the Owner was of the project.  Travelers submits that in the Underlying Action, the superintendent of Park East testified he was responsible for reporting "back to the owner, which is the school district, in the progression of the project." (DE 20-20 at 11:13-16.)  Further, the Standard Form of Agreement Between Owner and Contractor, AIA Document A132-2009, between VRD and the District that Traveler's received during the course of its investigation of the underlying claim identifies the District as Owner and VRD as the Contractor.  (DE 20-16 at ¶ 6; DE 20-18 at 1.) Though not dispositive, the Court considers as circumstantial evidence that the Claimant in the Underlying Action, who was employed by the subcontractor on the Project, asserts that the District was the owner of the Project site in his allegations.  (*Id.* at ¶ 14.)

Southwest does not submit evidence to refute this showing, but instead contends that there is a conflict between the Purchase Order and the AIA Form A401-1997 and thus the Purchase Order, which is blank as to who the Owner is, controls.  A review of the record reveals that Southwest has not submitted the AIA Form A401-1997 and therefore the Court is unable to make a determination as to the alleged conflict.  However, assuming *arguendo* that the AIA

Form A401-1997 lists the District as the Owner, the Court is not persuaded by that the fact that the Purchase Order is blank results in a conflict. Put another way, a conflict would occur if the two documents listed differing parties as the Owner. But, where, as here, Travelers has presented evidence that the District was the Owner of the Project and Southwest has failed to introduce evidence to rebut that fact, it is respectfully recommended that the Court find the District entitled to coverage.

## C. Primary and Excess Coverage

Travelers maintains that the Southwest Policy is primary to any coverage available to VRD, the District, and Park East under the Travelers Policy and therefore Travelers is entitled to reimbursement for the costs it has incurred in defending VRD, the District, and Park East in the Underlying Action. (DE 20-1 at 12-14.)

Travelers points to its policy's "other insurance" provision. (*Id.* at 13.) Southwest does not dispute that the Travelers Policy includes a provision that states that coverage under the Travelers Policy is "excess over any of the other insurance, whether primary, excess, contingent or on any other basis, that is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy." (DE 21-3 at ¶ 3.)[4]

Southwest does not address Travelers' argument or the provisions of the policy mentioned above. Rather, Southwest maintains that in light of its general position that no coverage is provided by Southwest, it is unnecessary to consider the "other insurance" clauses. (DE 23 at 2.)

---

[4] Southwest further does not dispute that the Travelers Policy contains a similar provision which contemplates coverage with respect to additional insureds "pursuant to a written contract or agreement." (DE 21-3 at ¶ 4.) Under that provision, the coverage under the Travelers Policy is still in excess to that under other insurance. (*See id.*)

However, because the Court recommends a finding that coverage is afforded under the Southwest Policy, and Southwest offers no opposition as to Travelers' arguments on primary and excess coverage, Southwest thus concedes the point. *See Colonial Sur. Co. v. A&R Cap. Assocs.*, 420 F. Supp. 3d 38, 45 (E.D.N.Y. 2017) ("That said, Defendants do not oppose Plaintiff's motion on this ground. In other words, Defendants have conceded the point") (collecting cases). This, in conjunction with the fact that the key provisions listed above are non-disputed, it is respectfully recommended that the Court find that coverage under the Southwest Policy is primary to any coverage available to VRD, the District, and Park East under the Travelers Policy and therefore Travelers is entitled to reimbursement for the costs it has incurred in defending VRD, the District, and Park East in the Underlying Action from the date of tender through the present.

### D. Reasonableness of Defense Costs

Southwest asserts that in the event the Court find in favor of Travelers, the Court should direct an inquest on the reasonableness of Travelers' defense fees. (DE 21-1 at 13-15.) Southwest argues that because the Declaration of Patrick J. Leathem submitted with Travelers' motion states in a conclusory fashion that Travelers' costs are approximately $44,231.83 as of May 4, 2022, without providing contemporaneous records for the Court's review, further inquiry is needed. Southwest contends that awarding fees simply based on the sum of the defense costs, as Travelers seems to do here, without such a hearing is error. (*Id.* at 14) (citing *Austin v. Juster Assocs.*, 222 A.D.2d 632, 633, 636 N.Y.S.2d 356, 357 (2 Dep't 1995) ("However, the court erred when it awarded attorneys' fees to Caldor without first conducting a hearing to determine the reasonableness of the fees")).

Travelers agrees.  (DE 22 at 10.)  Travelers maintains that to the extent the parties cannot settle the amount of prior defense fees among themselves, an inquest will be necessary.  (*Id.*)  It is Travelers' position that it is likely that only paper submissions on the issue is needed.  (*Id.*)

"[I]n the event of a breach of the insurer's duty to defend, the insured's damages are the expenses reasonably incurred by it in defending the action after the carrier's refusal to do so. . ." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Greenwich Ins. Co.*, 103 A.D.3d 473, 474, 962 N.Y.S.2d 9, 11 (2013) (quotations omitted); *Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 615 (S.D.N.Y. 2017) ("As Farm Family is obligated to defend and indemnify the Tendering Parties, Arch is likewise entitled to recoup the defense costs it has incurred in defending the Tendering Parties in the Underlying Action"); *Netherlands Ins. Co. v. Selective Ins. Co. of Am.*, No. 14 CIV. 7132 (KPF), 2016 WL 866348, at *8 (S.D.N.Y. Mar. 3, 2016) ("Because the Court concludes that the Selective Policy provides primary insurance coverage for [the insureds], Plaintiff is entitled to recover the reasonable costs of defending these two entities through August 13, 2014").

Courts frequently order, under similar circumstances, inquests to assess the reasonableness of defense costs after a finding of an insurers duty to defend.  *See, e.g., Value Wholesale, Inc. v. KB Ins. Co.*, 450 F. Supp. 3d 292, 308 (E.D.N.Y. 2020) (granting partial summary judgment as to duty to defend and directing an inquest on damages) *Arch Specialty Ins. Co.*, 238 F. Supp. 3d at 616 (S.D.N.Y. 2017) (granting summary judgment on claim for duty to defend and indemnify additional insures and finding insurer was "entitled to reimbursement of the defense costs it has incurred to date, in an amount to be determined through an inquest"); *Those Certain Underwriters at Lloyd's, London v. DVO, Inc.*, 473 F. Supp. 3d 236, 268 (W.D.N.Y. 2020) (granting motion for partial summary judgment and denying

cross-motion for summary judgment on duty to defend and providing a deadline by which prevailing party was to submit evidence of attorneys' fees and costs).

Without contemporaneous records, the Court cannot at this juncture determine the reasonability of Travelers' purported costs and expenses in connection with its defense of VRD, the District, and Park East in the Underlying Action. Accordingly, it is respectfully requested that the Court set a deadline for the parties to file submissions concerning defense costs and Travelers' requested fees at its convenience, and further schedule an inquest on defense costs if necessary.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the undersigned respectfully recommends that Travelers' motion for partial summary judgment on the issue of Southwest's duty to defend be granted, and Southwest's cross-motion be denied.

**OBJECTIONS**

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        February 10, 2023


                                        /s/ *James M. Wicks*
                                        JAMES M. WICKS
                                        United States Magistrate Judge